UNITED STATES DISTRICT COURT FOR
MASSACHUSETTS

| **Keely Gorham** <br> **Plaintiff,** <br><br> v. <br><br> George Nunez, Brad Talley, Lindsay Oglesby, Blake Rottiers, TR Accountants, Inc, and John/Jane Does 1-5 <br><br> **Defendant** | § § § § § § § § § § § |  |

### Plaintiff's Original Complaint

### Parties

1. The Plaintiff is Keely Desouza and natural person and was present in Boston, MA and can be served at the following address:

2. George Nunez is a natural person and can be served at 135 S State College Blvd Ste 200, Brea, CA 92821-5805 or 16808 Armstrong Ave ste 215, Irvine, CA, United States, California

3. Brad Talley, is a natural person and can be served at 135 S State College Blvd Ste 200, Brea, CA 92821-5805 or 16808 Armstrong Ave ste 215, Irvine, CA, United States, California

4. Lindsay Oglesby is a natural person and can be served at 135 S State College Blvd Ste 200, Brea, CA 92821-5805 or 16808 Armstrong Ave ste 215, Irvine, CA, United States, California

5. Blake Rottiers is a natural person and can be served at 135 S State College Blvd Ste 200, Brea, CA 92821-5805 or 16808 Armstrong Ave ste 215, Irvine, CA, United States, California

6. TR Accountants, Inc is a california entity and can be served at 16808 Armstrong Ave ste 215, Irvine, CA, United States, California

7. John/Jane Does 1-4 are other liable parties currently unknown to the Plaintiff.

## JURISDICTION AND VENUE

8. <u>Jurisdiction</u>. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

9. **<u>Personal Jurisdiction</u>.** This Court has general personal jurisdiction over the defendant because they have repeatedly placed calls to residents in this state, and derive revenue from residents in this state, and the sell goods and services to residents in this state, including the Plaintiff.

10. This Court has specific personal jurisdiction over the defendants because the calls at issue were sent by or on behalf of the defendants per an email sent to the Plaintiff identifying themselves (See Ex A).

11. **<u>Venue</u>.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at the state residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District.

12. This Court has venue over the defendants because the calls at issue were sent by or on behalf of the above named defendants to the Plaintiff a state resident

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227**

13. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding telemarketing.

14. The TCPA makes it unlawful "to make any call (other than a call made for emergency

purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

15. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

16. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

17. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

18. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

19. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

20. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and*

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

*Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

21. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

22. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

23. The FCC confirmed this principle in 2013, when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

24. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

25. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

26. The defendants have a tax preparation business that they are robocalling on behalf of that is a sole prop business ran and managed personally by the individual defendants listed above.

### Alleged calls to the Plaintiff

27. Plaintiff received multiple calls from a variety of spoofed caller ID's that were initiated using an automated telephone dialing system. The calls were on behalf of the defendants. The calls had a delay of 3-4 seconds of dead air before an audible pin drop tone sounded, indicating the calls were initiated using an ATDS. The Plaintiff recieved calls directly from the business owned and managed by the defendants from Jan 2023 through the present to the Plaintiff's cell number 508-330-2483.

28. Plaintiff has a limited data plan. Incoming text messages chip away at his monthly allotment.

29. Plaintiff has limited data storage capacity on his cellular telephone. Incoming calls from the defendants and his related entities consumed part of this capacity.

30. No emergency necessitated the calls

31. Each call was sent by an ATDS.

**Individual Defendants knowledge and Control over Tax Relief Advocates Including its Illegal Robocalling and Telemarketing**

32. At all times relevant to the claims alleged herein, the named individual defendants were the managers in charge of Tax Relief Advocates according to their website and BBB page. Each and every call was placed on behalf of the corporate entites owned by the individual defendants.

33. The individual defendants were aware that Tax relief advocates, was sending automated, telemarketing calls en masse to people, including Plaintiff, and had recieved previous complaints about these types of calls

34. As managers and owners, the individual defendants had the power to stop these spam campaigns.

35. As Tax relief advocates managers, they had the power to fire the managers and employees taking part of the day-to-day operations of these illegal robocalling operations.

36. Instead, the individual defendants allowed the calls to continue and the responsible managers to keep their jobs—despite his knowledge of frequent do-not-call complaints from recipients of these messages, including the Plaintiff.

37. Plaintiff notes a history of BBB complaints for robocalls and unsolicited calls to consusmers over the same timeframe, which were responded to by the company indicating that managers knew of the problem and did nothing.[2] See Ex B and C

### The Plaintiff's cell phone is a residential number

38. The text messages were to the Plaintiff's cellular phone, which is the Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

### I. FIRST CLAIM FOR RELIEF

### (Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))

### (Against All Defendants)

1. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making

---

[2] https://www.bbb.org/us/ca/brea/profile/tax-representative/tax-relief-advocates-1126-172019525/complaints

non-emergency telemarketing robocalls to Mr. Plaintiff's cellular telephone number without his prior express written consent.

3. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

4. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

5. Plaintiff also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

## II. SECOND CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

### (Against All Defendants)

6. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

7. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

    a. a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1);[3]

    b. training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[4] and,

---

[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 (codifying a June 26, 2003 FCC order).

c.  in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[5]

8. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

9. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

10. Plaintiff also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and business entity name in the solicitations.

### III. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Keely Gorham prays for judgment against Defendants jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendants violate the TCPA

C. An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

---

[5] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

      D.      An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for at least 10 calls and further calls as discovery shows.

      E.      An award to Plaintiff of damages, as allowed by law under the TCPA;

      F.      An award to Plaintiff of interest, costs and attorneys' fees, as allowed by law and equity

      G.      Such further relief as the Court deems necessary, just, and proper.

March 20, 2023

*Keely Gorham*
Keely [redacted] Gorham, Plaintiff, 3406 Windsor Woods Canton, MA 02021